THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CECILIO PELLOT CANCELA, Defendant and Appellant.

No. CR-66-248.     Decided February 8, 1967.

*Enrique Miranda Merced, Edna Abruña Rodríguez,* and *E. Armstrong de Watlington* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Lolita Miranda de Escudero, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant Cecilio Pellot Cancela was convicted by a court without a jury of a violation of § 155 of the Penal Code of Puerto Rico (33 L.P.R.A. § 512).[1]

---

[1] Section 155 of the Penal Code of Puerto Rico in its pertinent part provides that:

".     .     .     .     .     .     .     .     .

"Every person who, in violation of the law, *has in his possession, with intent to circulate or sell them* within a prison, jail or penal institution in Puerto Rico, or in the premises thereof, drugs, narcotics, or stupefacients, weapons of any kind, razors or razor blades, alcoholic or intoxicating beverages, explosives, projectiles, or any other smuggled goods or thing, or any smuggled letter or message, shall be guilty of a felony and shall, upon conviction, be punished by a maximum fine of ten thousand (10,000) dollars or by imprisonment for not less than one (1) nor more than ten (10) years, or by both penalties, in the discretion of the court. [Italics ours.]

".     .     .     .     .     .     .     .     .

"The provisions of the laws on probationary and indeterminate

On appeal defendant alleges that the trial court erred in denying his motion for peremptory acquittal based on the fact that the evidence for the People failed to establish defendant's purpose in circulating or selling the Treet razor blade that the police found in a bandage that appellant had on his right hand when returning to the penitentiary from a hospital where he was confined after he suffered an accident in the penitentiary. For the reasons stated below we conclude that the trial court should have granted the motion for acquittal in question.

The information which gave rise to the preceding conviction is stated as follows:

"The aforementioned defendant: CECILIO PELLOT CANCELA, on or around October 23, 1965 and in Río Piedras, P.R., which is under the jurisdiction of the Superior Court of Puerto Rico, San Juan Part, illegally, wilfully, and maliciously, and knowingly and with the criminal intent to circulate or sell it to another prisoner, had in his possession a Treet safety-razor blade within the State Penitentiary of Río Piedras, P.R. in violation of the law and in so having said safety-razor blade within the aforementioned prison, he did it or had the same as smuggled goods."

The facts which gave rise to the preceding information are summarized below:

Prior to October 23, 1965, by reason of having suffered an accident, defendant Cecilio Pellot Cancela, who was confined in the state penitentiary, was transferred to the hospital in Professional Building.

On the day of the occurrence, that is, October 23, 1965, he was discharged from the hospital and transferred to the state penitentiary. On arriving at the penitentiary he was taken to the office of Pedro Juan Rodríguez the lieutenant of the penal guards, where he was searched. In a bandage

---

sentences shall not be applicable to persons convicted of violations of this Act."

he had on his right hand they found a Treet razor blade in its wrapping. The prisoner was asked what he wanted it for and he remained silent.[2]

At the hearing of the case, subsequent to the presentation of the evidence for the prosecution, the attorney for the

[2] On examination by the prosecuting attorney, witness Pedro Juan Rodríguez (lieutenant of the penal guards) testified:

"Q.—What intervention, if any, did you have with Cecilio Pellot Cancela around October 23, 1965?

A.—On that day he was returning; he had been discharged from the hospital where he was undergoing an operation on his hand.

Q.—Did they take him to your office?

A.—They took him to my office.

Q.—What happened in your office?

A.—He had a bandage on his right hand and I untied it.

Q.—Why did you untie the bandage?

A.—I saw certain suspicious movements, he complained about his hand and he was gesturing, and this attracted my attention. I searched him and inside the bandage he had a razor blade.

Q.—How was that razor blade, Rodríguez?

A.—A Treet razor blade like a gem.

Q.—How was that razor blade, wrapped or unwrapped?

A.—It was wrapped.

Q.—When you found that, what did you do, if you did anything?

A.—I asked him what he wanted it for, and he remained silent and did not want to answer.

Q.—And in view of that situation, what did you do, Rodríguez?

A.—I had him make a sworn statement and I submitted the case to court."

On examination by the prosecuting attorney, Marcos Lebrón Ruiz (penal guard) testified as follows:

"Q.—Tell me, Lebrón, what intervention, if any, did you have with Cancela around October 23, 1965?

A.—On that date I had the custody of Cancela and he was confined in the Professional Building. Then the doctor discharged him and I transferred him to the Penitentiary under my custody and when I took him to the office of the lieutenant . . .

Q.—And what happened, if anything, after you took him to the Penitentiary?

A.—I took him to the office of Lieutenant Fortier and there he was searched, Lieutenant Fortier searched him and he found a gem-style razor blade wrapped in a bandage he had on his right hand.

Q.—When the lieutenant discovered that razor blade, what happened if anything?

A.—The Lieutenant hurried to report the charge there.

defense moved for the peremptory acquittal of the defendant on the ground that the evidence for the People did not establish that defendant's intention was *to circulate* or sell the razor blade which was in his possession.

The trial court determined that there was no evidence in the case of the intention to sell the aforementioned razor blade; that eliminating this allegation on the preceding ground, there remained the allegation that defendant had the intention to circulate the razor blade within the penitentiary.

The parties proceeded to indicate what they meant by "to circulate" and then the judge took the case under advisement until after he heard the evidence for the defense.

After the presentation of the evidence for the defense, the court denied the motion for acquittal, the transcript of which was not sent to us. Appellant was found guilty of the offense in question and was ordered to serve one (1) to two (2) years in the penitentiary at hard labor consecutively with the sentence he is serving.

The attorney for the defense maintained that "to circulate" implies at least actions of delivering to other persons with the intent that that thing given away or with which one parts, passes to the hands of another person.

Contrariwise the prosecuting attorney understood that "to circulate" is simply to start in motion, it is not required that it pass from hand to hand.

---

Q.—What did Pellot say, if he did say anything there?

A.—He made no comment.

Q.—And after this, did you have any further intervention in relation to these facts, sir?

A.—No, sir.

Q.—Please examine this razor blade which has been marked Exhibit I of The People and tell me whether you have seen it before today?

A.—Yes, on the day of the search. The day that defendant was searched, that was the one.

Q.—Was it in that same condition?

A.—Yes."

The Solicitor General points out the provisions of § 12 of the Penal Code (33 L.P.R.A. § 33) that is:

"The intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused. . . . A malicious and guilty intention is presumed from the manner and deliberation with which an unlawful act is intended or committed for the purpose of injuring another."

He also informs that defendant's intent to circulate the razor blade within the penitentiary may be deduced from all the circumstances of the case. It was so understood by the trial judge.

From the prosecuting attorney's evidence it appears that it was established that defendant had the razor blade in his possession. The People did not prove any circumstance, event, fact, or act whatsoever from which the trial court, reasonably and logically could deduce or infer that defendant, as specifically stated in § 155 of the Penal Code of Puerto Rico, *supra*, "has in his possession [the razor blade] with intent to circulate or sell them." *People* v. *Ortiz García*, judgment of February 2, 1966.

■■ The statute, as we have said, requires the intent to circulate or sell, that is, to pass from one person to another the object in question. It is not sufficient to establish the material possession thereof. To circulate means "to go about or pass something from person to person"—Martín Alonso, *Enciclopedia del Idioma*. This verb is defined by the Real Academia Española in the same terms. In *Willard* v. *State*, 87 S.W.2d 269 (Ct. Crim. App. Tex. 1935), it was stated that the term "circulate" in a statute forbidding the issuance and circulation of counterfeit stamps means "when it passes, as from one person or place to another person or place."

For the reasons stated the judgment rendered in this case by the Superior Court, San Juan Part, on March 18, 1966 will be reversed and defendant acquitted.

Mr. Chief Justice Negrón Fernández did not participate herein.